## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:07CR00005 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RICHARD DEAN HINEN**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy Dickenson, Assistant Federal Public Defender, and Christine Madeleine Spurell, Research and Writing Attorney, Office of the Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, charged with failing to register as a sex offender under the new Sex Offender Registration and Notification Act, has moved to dismiss the indictment on constitutional and procedural grounds. For the reasons set forth, the motion will be denied.

I

By indictment returned March 6, 2007, it was charged that between August 1, 2006, and February 17, 2007, the defendant Richard Dean Hinen, while being a person required to register pursuant to the Sex Offender Registration and Notification Act, traveled in interstate commerce and failed to register or update his sex offender

registration, in violation of 18 U.S.C.A. § 2250 (West Supp. 2007). The defendant was convicted in a Virginia state court on July 19, 2001, of taking indecent liberties with a child. On September 10, 2001, he registered as a sex offender as required under Virginia law. *See* Va. Code Ann. §§ 9.1-900 to 9.1-921 (2006). He served a term of probation that ended on July 26, 2006. The government contends that he moved his residence to Tennessee in August of 2006 but did not thereafter register or update his registration.[1]

In his Motion to Dismiss the Indictment, the defendant contends that he was not required to register as alleged in the indictment, because the Attorney General had not adopted a rule construing the relevant statute by the dates charged. He also asserts that the statute is unconstitutional. Finally, he argues that venue in this district is improper. These arguments will be considered seriatim.


II

Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act") encompasses the Sex Offender Registration and Notification Act ("SORNA"), Pub. L. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006). The Adam

---

[1] Not all of these facts are alleged in the indictment, but the defendant asserts that they are what the government will attempt to prove and the government does not dispute that assertion.

Walsh Act, including SORNA, was approved by the President on July 27, 2006. SORNA created a new federal offense of failing to register as a sex offender ("FFR"), with a maximum penalty of ten years imprisonment. *See* 18 U.S.C.A. § 2250.[2] The elements of the crime as applicable to the present case are that the defendant (1) was required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failing to register or update a registration as required by SORNA. *Id*. at § 2250(a). SORNA requires a person convicted of a sex offense to register, and keep the registration current, in each jurisdiction where the offender resides. 42 U.S.C.A. § 16913 (West Supp. 2007).

In addition to this new federal crime, SORNA revised the national standards for sex offender registration and notification and requires the states to incorporate these new standards in their own laws or face a reduction in federal funding. *See id*. § 16925(a). The states are given three years to comply with the new standards, with possible extensions. *Id.* § 16924.

SORNA provides that a sex offender must initially register before completing a sentence of imprisonment or not later than three days after being sentenced, if not

_____

[2] A 1994 federal law, known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, adopted national registration guidelines and made failure to register under a state sexual offender registration program a federal misdemeanor. *See* 42 U.S.C.A. § 14072(i) (West 2005).

- 3 -

sentenced to imprisonment. *Id.* at 16913(b). Thereafter, a sex offender must appear in person in at least one jurisdiction in which he is required to register and inform it of changes in information, such as change of residence. *Id.* at 16913(c). SORNA delegates to the Attorney General the authority

> to specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

*Id.* at 16913(d).

On February 28, 2007, the Attorney General issued an interim rule providing that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act." 28 C.F.R. § 72.3 (2007).

The defendant argues that he was not required to register under SORNA because the Attorney General had not adopted the rule delegated in § 16913(d) until after the dates alleged in the indictment. I disagree.

The plain language of SORNA requires an offender to register, without regard to any construction of the statute by the Attorney General. The delegation provision of the statute refers to persons who, prior to the enactment of SORNA's revised standards, were not required to register by their state's registration law. *See United*

- 4 -

*States v. Templeton*, No. CR-06-291-M, 2007 WL 445481, at *4 (W.D. Okla. Feb. 7,

2007) (holding that § 16913(d) only applies to individuals who were unable to initially

register and not to a defendant who was able to register under his state's pre-SORNA

law); *see also United States v. Manning*, No. 06-20055, 2007 WL 624037, at *2

(W.D. Ark. Feb. 23, 2007) ("A defendant can violate the law by failing to register or

update a SORNA imposed registration obligation or a registration obligation imposed

by another law."). Thus, the Attorney General's rule makes no difference as to the

present case, as long as the government can prove that the defendant was required to

register or update his registration under the existing state law of his residence.[3]

---

[3] As the Attorney General noted in his explanation of the interim rule, § 16913(d)
applies, for example, to

> the case of an offender who was convicted of, and sentenced to probation for,
> a sex offense within the categories for which SORNA requires registration
> prior to the enactment of SORNA, but who did not register near the time of his
> sentencing because the offense in question was not subject to a registration
> requirement under federal law or applicable state law at the time.

72 Fed. Reg. 8894, 8896 (Feb. 28, 2006). The Attorney General has not yet adopted a rule
governing this example. *Id.*

III

The defendant raises numerous arguments regarding the constitutionality of SORNA. He claims it is both unconstitutional on its face and as applied to sex offenders convicted before the date of its enactment. A facial challenge asserts that the statute is unconstitutional in all situations while an as-applied challenge attacks the statute's application only to the party before the court. *Giarratano v. Johnson,* 456 F. Supp. 2d 747, 750 (W.D. Va. 2006).

The defendant first argues that as applied to him—a sex offender convicted before July 27, 2007—SORNA is unconstitutional because the statute's grant of authority to the Attorney General under 42 U.S.C.A. § 16193(d) violates the non-delegation doctrine of the Constitution. This argument is premised on the defendant's interpretation that § 16193(d) gives the Attorney General the exclusive authority to decide whether all sex offenders convicted prior to July 27, 2006, should be subject to the registration requirements imposed by SORNA and how they should comply with the terms of the statute. The defendant argues that by passing SORNA Congress has given the "Attorney General the authority to decide what the law is, to whom it applies, and how it should be complied with ." (Def.'s Br. at 12.)

If Congress has abdicated part of its core constitutional functions to another branch of government, as the defendant claims, this would raise serous constitutional

- 6 -

questions. *See Touby v. United States*, 500 U.S. 160, 165 (1991) ("Congress may not constitutionally delegate its legislative power to another branch of Government."). It is deeply rooted in the landscape of our constitutional law that one branch of government many not cede functions exclusively granted to it by the Constitution to another branch. *See Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892) ("That congress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the constitution.").

However, as explained above, a plain reading of the statute shows that Congress has only delegated authority to the Attorney General to issue a rule covering the limited instance where a person who is classified as a sex offender under SORNA is unable to currently register as such in a jurisdiction where he resides, works, or is a student. Such an inability may be rare, but possible, considering that Congress has classified a number of offenses as sex crimes for which some states have traditionally not required registration. *See* 42 U.S.C.A. § 16911 (West Supp. 2007). Furthermore, Congress has determined that all persons guilty of certain enumerated offenses are "sex offenders" regardless of the date of their conviction. Some states exempt certain offenders from registering depending on the dates of their convictions or remove their names from the registry after a certain number of years of good behavior. *See, e.g.,*

- 7 -

Va. Code Ann. § 9.1-901(A) (requiring only those convicted of sex offenses after July 1, 1994, to register); Tenn. Code Ann. § 40-39-207 (2006) (allowing removal of sex offenders from registry after ten years of compliance). Although classified as sex offenders under SORNA, such persons would have been unable to initially register because existing state registries do not provide a means for them to do so.

These are the persons that Congress envisioned would be unable to register and for whom the Attorney General is required to promulgate regulations regarding applicability and procedures for registering.[4] Therefore, under SORNA, the Attorney General has only been given the power to promulgate regulations under the most limited of circumstances. The delegation of such authority is not so broad as to be

---

[4] It is likely Congress gave the Attorney General this authority under § 16193(d) to keep certain persons from being swept unnecessarily into the onerous requirements of the statute. For example, under SORNA, an array of individuals may be considered sex offenders based on the nature of their state convictions. *See* 42 U.S.C.A. § 16911 (5)(A)(i) (defining a "sex offense" as "a criminal offense that has an element involving a sexual act or sexual contact with another."). This is particularly true in light of the fact that many states once enacted laws criminalizing certain consensual sexual acts between adults. *See* Patricia A. Cain, *Litigating for Lesbian and Gay Rights: A Legal History*, 79 Va. L. Rev. 1551, 1564-72, 1587-88 (1993); Louise D. Palmer, *Wrongly Branded by a Scarlet Letter*, The Oregonian, Oct. 12, 1997, at E1; Nicholas Riccardi & Jeff Leeds, *Older Gays Caught by Megan's Law*, Pitt. Post-Gazette, Mar. 2, 1997, at A9. Most states have also exempted persons from registering who were convicted of acts that are now no longer illegal and have constitutionally protected status. *See Lawrence v. Texas,* 539 U.S. 558, 575-76 (2003) (noting that an adult convicted of "consensual homosexual conduct" would be subject to sex offender registration laws in at least four states). Thus, the delegation of authority under § 16193(d) allows the Attorney General to craft regulations that ensure all persons convicted of traditional sex crimes are registered while exempting those who fall outside the scope of the statute as intended by Congress.

violative of the non-delegation doctrine.  *See Touby,* 500 U.S. at 169; *Mistretta v. United States*, 488 U.S. 361, 412 (1989).

This interpretation is bolstered by Congress's intent to apply SORNA to the large number of persons falling within the definition of sex offender but who were convicted prior to SORNA's enactment.  Congress's primary motivation in enacting this legislation was to do what the defendant claims SORNA does not do—regulate all sex offenders, regardless of the dates of their convictions.  *See* 42 U.S.C.A. § 16901 (West Supp. 2007).[5]   Indeed, it was Congress's desire to create a

_____

[5]   Although there are no committee reports regarding the Adam Walsh Act, the Congressional Record leading up to passage of this act is instructive on Congress's intent in drafting this statute.  In explaining the need for stricter and more uniform registration requirements to his colleagues during a floor debate on the Adam Walsh Act, Senator Orrin Hatch, R-Utah, co-sponsor of the bill, stated as follows:

> Laws regarding registration for sex offenders have not been consistent from State to State [sic] now all States will lock arms and present a unified front in the battle to protect children.  Web sites that have been weak in the past, due to weak laws and haphazard updating and based on inaccurate information, will now be accurate, updated and useful for finding sex offenders.

> There are more than a half-million registered sex offenders in the United States. Those are the ones we know.  Undoubtedly there are more.  That number is going to go up.  Over 100,000 of those sex offenders are registered but missing.  That number is going to go down.  We are going to get tough on these people.  Some estimate it is as high as 150,000 sex offenders who are not complying.  That is killing our children.

152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch).

Similar statements were also made by members of the House of Representatives.  On July 25, 2006, while speaking on the House floor regarding the legislation, House Judiciary Committee Chairman James Sensenbrenner, Jr., R-Wis., a sponsor of the bill, stated:

- 9 -

comprehensive and uniform registration system among the states to ensure offenders could not evade requirements by simply moving from one state to another. It would be illogical for members of Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements and then exempt those same offenders from SORNA.

Even if the statute is open to the interpretation that it gives the Attorney General the authority to determine the applicability of SORNA to all sex offenders with convictions pre-dating its enactment, the canon of constitutional avoidance preponderates in favor of finding that Congress did not cede its core legislative

---

There are over a half million sex offenders in the United States and up to 100,000 offenders are unregistered and their locations unknown to the public and law enforcement. [This bill] contains strict national offender registration and data sharing requirements to ensure that law enforcement agencies and America's communities know where sex offenders live and work.

By requiring national registration obligations, regular updates, frequent in-person verification, and providing tough and targeted criminal penalties, we intend to make one thing clear to sex offenders across the county–you better register, and you better keep the information, current, or you are going to jail.

152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner).

Considering this recognition that upwards of 500,000 people were registered as sex offenders on state registries prior to SORNA's passage, it is unlikely that Congress sought to exclude all these persons from the special requirements and penalties imposed by SORNA, unless and until the Attorney General determined otherwise.

- 10 -

functions to the executive branch by the language in subsection (d).  *See Gonzales v. Carhart,* 127 S. Ct. 1610, 1631 (2007) (stating that it is an elementary rule of statutory construction that every reasonable construction should be utilized to save a statute from unconstitutionality); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (holding that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [the statute should be construed] to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *see also Indus. Union Dep't v. Am. Petroleum Inst.*, 448 U.S. 607, 646 (1980) (stating that it is preferable to interpret a statute so as to avoid a construction that gives "a sweeping delegation of legislative power"to another branch of government).

Since the defendant is not a person who has been unable to register within the meaning of subsection (d), the statute does not violate the non-delegation doctrine.


IV

The defendant further attacks the constitutionality of SORNA under the Due Process Clause of the Fifth Amendment.  He first claims that as applied to him the statute violates his right to procedural due process because he was not given actual

notice that travel across state lines subjected him to federal criminal penalties. This claim is unavailing.

The defendant argues that SORNA violates procedural due process for all those persons convicted prior to the date of its enactment because such persons have not been given notice of the requirements of SORNA by state or federal officials in a manner similar to the notice given to those convicted after the date of its enactment. However, he misconstrues the requirements of SORNA. The terms of this statute do not mandate that those already registered as sex offenders or those who should have been registered as sex offenders receive any specific notice regarding its requirements. The fact that the defendant may not have been advised of the specific requirements of SORNA is not determinative.

Congress likely understood that those who stood convicted of a sex crime prior to SORNA's enactment were fully aware of the requirements to register and the consequences for failing to do so. SORNA was not the first attempt by Congress to regulate sex offenders who failed to comply with state registration requirements. The Jacob Wetterling Act of 1994 directly imposes registration requirements on certain classes of sex offenders, and the defendant is included within this class. Under this act, sex offenders registered in any state who move to another state must notify law

- 12 -

enforcement authorities of their new state of residence.[6]  *See* 42 U.S.C.A. § 14071 (West 2005).  Regardless of the applicability of SORNA to the defendant, as of the dates in question, the nature of his conviction required him, under a long-standing federal law, to register in his state of residence and any other state where he was employed, carried on a vocation, or was a student.  *See id.* § 14071(b).  Furthermore, following his conviction, Virginia state law required him to register as a sex offender, which he did in 2001.  *See* Va. Code Ann. 9.1-903 (requiring registration within three days of release from confinement or within three days of the suspension of a sentence if no confinement is imposed).  Similarly, Tennessee law required him to register promptly once establishing residency there.  *See* Tenn. Code Ann. § 40-39-203 (2006) (requiring a sex offender to register within forty-eight hours of establishing residency within the state).  Thus, the defendant had sufficient notice that failing to register as a sex offender was illegal.

Furthermore, aside from the long-standing state and federal mandates requiring registration of sex offenders, individuals convicted of certain conduct are placed on constructive notice that they may be subjected to future regulations because of the nature of their criminal conviction.  *See United States v. Mitchell*, 209 F.3d 319, 323-

---

[6] Although the categories of persons required to register under the Jacob Wetterling Act are narrower than those of SORNA, the defendant is considered a "sex offender" required to register under both statutes.

- 13 -

24 (4th Cir. 2000); *United States v. Bostic*, 168 F.3d 718, 722-23 (4th Cir. 1999). In this instance, the defendant was convicted of committing a sex crime against a child. By committing this crime, the defendant "removed himself from the class of ordinary citizens" to the point "that cannot reasonably expect to be free from regulation" as a sex offender, especially when relocating to another jurisdiction. *Bostic*, 168 F.3d at 722.

The defendant also argues that SORNA violates his right to substantive due process under the Fifth Amendment because a person may be subjected to SORNA's requirements even though he was not in fact convicted of an offense that Congress listed as a qualifying sex offense, or whose conviction was set aside. Because the defendant falls squarely within the category of persons required by Congress to register under SORNA and fails to allege his conviction has been set aside, the statute is constitutional as applied to him. Moreover, he lacks standing to challenge the constitutionality of the statute on these grounds since he can allege no injury traceable to these alleged constitutional deficiencies in the statute. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, as applied to the defendant, SORNA does not violate his procedural or substantive due process rights under the Fifth Amendment.

The defendant next argues that the statutory scheme of SORNA and FFR, as applied to his 2001 conviction, are punitive and violate the Ex Post Facto Clause of the Constitution. If these two statutes inflict a greater punishment upon the defendant than was provided for when he was originally convicted of the crime for which he now must register, then there would be ex post facto implications. *See Calder v. Bull*, 3 U.S. 386, 390 (1798).

The defendant submits that under the factors used by Supreme Court in *Smith v. Doe,* 538 U.S. 84, 97 (2003), to evaluate the constitutionality of the Alaska Sex Offender Registration Act, the statutory scheme at issue in this case constitutes a violation of the Ex Post Facto Clause. After careful consideration of this argument, I disagree. The contours of the statutory scheme at issue in *Smith* are nearly indistinguishable from the one at issue here. However, similarity between the two statutory schemes does not foreclose further inquiry. The court must undertake a two-pronged inquiry that examines the intent of Congress and the effects of the legislation on those falling under its terms. *Id.* at 93.

Regardless of the similarity between the two, Congress's intent in crafting this statutory scheme may well have been different than the intent of the Alaska legislature, as found by the Supreme Court in *Smith*. In analyzing a claim under the

Constitution's prohibition against ex post facto laws, a court must first determine whether "the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). If Congress intended SORNA and FFR to impose punishment on those already convicted of a crime, these statutes are a violation of the Ex Post Facto Clause. *See Smith,* 538 U.S. at 92. If, however, it was Congress's intention to enact a regulatory scheme that is civil and nonpunitive, a court must further examine "[w]hether the statutory scheme is so 'punitive either in purpose or effect as to negate [Congress's] intention to deem it civil.'" *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248-49 (1980)).

To determine whether the statutory scheme at issue is punitive or regulatory, I must evaluate whether Congress "indicated either expressly or impliedly a preference for one label or the other." *Smith,* 538 U.S. at 93. Congress stated that its purpose in establishing a comprehensive national system for registration of sex offenders was "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators ." 42 U.S.C.A. § 16901. The face of this statutory scheme evidences no desire by Congress to simply exact punishments against sex offenders. Rather, Congress described this law as a public safety measure. *See id.* Implicit in the legislative history of the Adam Walsh Act is Congress's concern that sex offenders who evaded registration requirements by

- 16 -

crossing state lines were a threat to public safety.[7]  There is no indication that animus

or a desire to further punish sex offenders were motivating factors in this legislation.

_____

[7]  See for example, Senator Joseph Biden, D-Del., stating in reference to the bill's registration requirements that

> One of the biggest problems in our current sex offender registry system happens when registered sex offenders travel from one State to another.  This bill fully integrates and expands the State systems so that communities nationwide will be warned when high-risk offenders come to live among them.  And we target resources under this bill at the worst of the worst and provide Federal dollars to make sure States aren't left holding the bag.

152 Cong. Rec. S8012, 8014 (daily ed. July 20, 2006) (statement of Sen. Biden).

Senator Byron Dorgan, D-N.D., also noted on the Senate floor that "[n]early three-quarters of the violent sex offenders are going to repeat that offense when released from prison. We know that from statistics.  That is why this legislation is so very important." 152 Cong. Rec. S8012, S8017 (daily ed. July 20, 2006) (statement of Sen. Dorgan).

Senator Maria Cantwell, D-Wash., explained that establishing uniformity among state sex offender registries was critical because,

> Today there is far too much disparity among State registration requirements and notification obligations for sex offenders.  Yes, there is already a National Registry, but it is based on often outdated listings from all 50 States.  Worse, there are currently no incentives for offenders to provide accurate information, which helps to undermine the system.

> Child sex offenders have exploited this stunning lack of uniformity, and the consequences have been tragic.  Twenty percent of the Nation's 560,000 sex offenders are "lost" because State offender registry programs are not coordinated well enough.

152 Cong. Rec. S8012, 8020 (daily ed. July 20, 2006) (statement of Sen. Cantwell).

This same history reveals that Congress acted in a manner to ensure that sex offenders comply with the range of pre-existing civil requirements that existed in every state at the time of SORNA's passage.

Furthermore, though not dispositive of legislative intent, the location and labels of statutory provisions may also be considered in determining Congress's intent. *See id.* at 94. Here, SORNA is codified in Title 42, which deals with provisions relating to the public health and welfare. Though the FFR provision was placed in Title 18, which deals with crimes and criminal procedure, the majority of the Act was codified in Title 42. The placement of SORNA in Title 42 of the United States Code is yet another indication that Congress believed it was creating a civil, nonpunitive regime for the purpose of public safety. *See id.* at 94-95.

Having now decided it was Congress's intent that the statutory scheme at issue be nonpunitive, I must now determine whether its effect or purpose actually negates Congress's intent that it be non-punitive. Based on *Smith*, I find that it does not. "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (internal quotations omitted). After evaluating several factors to determine whether the effects of a sex offender registration requirement were unduly punitive, the *Smith* court

- 18 -

concluded that sex offender registration requirements are not so punitive as to negate the legislature's intent that they be nonpunitive.

Undertaking a similar analysis is unnecessary in this case, since the effects of the federal registration requirements are nearly identical compared to those involved with the Alaska statutory scheme at issue in *Smith*,[8] I am bound to follow *Smith's* conclusion that the effects of sex offender registration requirements do not negate legislative intent that such registration requirements be nonpunitive. Accordingly, as applied to the defendant, the present statutory scheme is not a violation of the Ex Post Facto Clause.

## VI

Finally, the defendant asserts that SORNA and FFR are unconstitutional because they exceed the powers delegated to Congress under the Commerce Clause. The Commerce Clause grants Congress the power "to regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3.

---

[8] This statute varies from the Alaska statute in only one respect. Under SORNA, a sex offender is required to make periodic in-person appearances to provide an updated photograph and verify registration information. Such in-person appearances were not required under the Alaska statute. However, the mere requirement that a person keep his registration information current by personal appearance does not indicate that SORNA is punitive in effect. *See Templeton,* 2007 WL 445481, at *5 n.5.

This power includes the authority to regulate (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (holding that the Gun-Free School Zone Act exceeded Congress's power under the Commerce Clause); *see also United States v. Morrison,* 529 U.S. 598, 626-27(2000) (holding that the civil remedy portion of the Violence Against Women Act exceeded Congress's power under the Commerce Clause).

The defendant claims that the FFR statute is unconstitutional because, "In light of *Lopez*, and its progeny, [it] does not bear a sufficient nexus with interstate commerce to fall within the carefully enumerated powers of the federal government." (Def.'s Br. at 20-21.) In the abstract, many activities traditionally regulated by states could be thought of as affecting interstate commerce. However, in the wake of *Lopez* and *Morrison*, the standards are more demanding regarding when Congress can intrude on an area that is not purely "commercial" and that has been traditionally regulated by the states. Essentially, the defendant asks this court to use the "substantially affects" test applied by the Court in *Lopez* and *Morrison* to strike down this legislation.

- 20 -

The defendant reasons that neither SORNA nor FFR affect an interstate activity that is commercial in nature and that any connection between this legislation and a commercial activity is too attenuated to survive a *Lopez* challenge. However, the defendant misconstrues the level of scrutiny applicable to this type of statute under the Commerce Clause. Unlike the statutes at issue in *Lopez* and *Morrision*, which involved an indirect regulation of interstate commerce, FFR contains a jurisdictional element directly tied to the federal power to regulate persons who travel across state lines. FFR falls under the category of statutes that regulate "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558.

FFR does not attempt to punish sex offenders for intrastate failure to register. Rather, the federal government gains jurisdiction only where a person required to register under SORNA "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country." 18 U.S.C.A. § 2250(a)(2)(B).

Where a jurisdictional predicate is present in a statute, as is the case here, the "substantially affects" test is inapplicable. *See United States v. Williams*, 342 F.3d 350, 354-55 (4th Cir. 2003) (holding that the jurisdictional predicate in the Hobbs Act requires only a showing of minimal effect on interstate commerce); *see also United States v. Jamison*, 299 F.3d 114, 118 (2d Cir. 2002) (same); *United States v. Marrero*,

299 F.3d 653, 654-56 (7th Cir. 2002) (same); *see also United States v. Hopper,* Nos. 96-4603, -4705, -4834, 1997 WL 796160, at *1 (4th Cir. Dec. 31, 1997) (unpublished) ("Because there is a jurisdictional element present in the statute, the 'substantially affects' test is not applicable . . . .").

The jurisdictional element involved in FFR both distinguishes it from the statutes at issue in *Lopez* and *Morrison* and satisfies the requirements of the Commerce Clause. *See United States v. Cobb*, 144 F.3d 319, 321-22 (4th Cir. 1998) (rejecting *Lopez* challenge to federal carjacking statute because it contained a jurisdictional element requiring the vehicle to have been transported in interstate commerce); *United States v. Wells*, 98 F.3d 808, 810-11 (4th Cir. 1996) (rejecting *Lopez* challenge to 18 U.S.C.A. 922(g) (West 2000 & Supp. 2007) because a commerce nexus was shown by the statute's requirement that the defendant received a gun shipped or transported in interstate commerce).

Because Congress has established a jurisdictional predicate of interstate or foreign travel, the government need only establish a de minimis effect on interstate commerce. Similar to the federal carjacking statute and the Hobbs Act, FFR has at least a de minimis effect on interstate travel, because it involves the travel of certain person across state lines. Accordingly, FFR is a proper exercise of congressional authority under the Commerce Clause.

- 22 -

## VII

Finally, the defendant argues that even if SORNA is constitutional on its face and as applied to him that venue was improperly laid in this district. He alleges that venue is only proper in Tennessee because that is the location where he allegedly committed an illegal act—failing to register as a sex offender.

Contrary to the defendant's argument, it is not specifically alleged in the indictment that the violation of SORNA involved failing to register under Tennessee law. Under Virginia law, a person required to register as a sex offender is required to promptly update authorities on changes in his residence, "whether within or without the Commonwealth." Va. Code Ann. § 9.1-903(D). If the person's new residence is located outside of Virginia, "the person shall register in person with the local law-enforcement agency where he previously registered within 10 days prior to his change of residence." *Id.* Therefore, it would be a violation of Virginia law for the defendant to have moved his residency to another state without alerting Virginia authorities.

However, even if the failure to register solely involved Tennessee law, the objection to venue is misplaced.

A defendant has a right under the Constitution to be tried in the state and district where the crime is alleged to have occurred. *See Travis v. United States*, 364 U.S. 631, 634 (1961). Federal Rule of Criminal Procedure 18 provides that "the

Case 2:07-cr-00005-JPJ-PMS   Document 32   Filed 05/12/07   Page 23 of 26   Pageid#: 121

government must prosecute an offense in a district where the offense was committed." Congress typically provides direction regarding where an offense is considered to have been committed by inserting a venue provision into the substantive statute. *See United States v. Cofield*, 11 F.3d 413, 416 (4th Cir. 1993). The FFR statute contains no venue provision. *See* 18 U.S.C.A. § 2250. However, 18 U.S.C.A. § 3237(a) (West 2000), the general venue statue, provides insight into determining the situs of the crime of failing to register as a sex offender. This statute provides in pertinent part that

> [a]ny offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

*Id.* § 3237(a).

A plain reading of the general venue statute suggests that failing to register under SORNA is a continuing offense since it involves an element of interstate or foreign travel. Accordingly, it would be proper to prosecute a violation of § 2250 in any district through which the defendant had moved.

This interpretation is bolstered by the fact that courts have interpreted a violation of the Travel Act, 18 U.S.C.A. § 1952(a) (West 2000 & Supp. 2007), to be a continuing offense because it contains a jurisdictional element of interstate travel.

- 24 -

*See United States v. Burns*, 990 F.2d 1426, 1437 (4th Cir. 1993); *United States v. Pepe*, 747 F.2d 632, 660 (11th Cir. 1984); *United States v. Blitstein*, 626 F.2d 774, 782-83 (10th Cir. 1980); *United States v. Polizzi*, 500 F.2d 856, 899 (9th Cir. 1974); *United States v. Guinn*, 454 F.2d 29, 33 (5th Cir. 1972). Both the Travel Act and FFR contain the same jurisdictional predicate of travel in foreign or interstate commerce. The Fourth Circuit has held that for a violation of the Travel Act "venue lies in any district in which the travel occurred, including the district in which the travel originated." *Burns*, 990 F.2d at 1437 (quoting *Pepe*, 747 F.2d at 660).

Applying these principles to the present case, I find that failing to register under SORNA constitutes a continuing offense. Accordingly, venue is proper in either Virginia, the state in which the travel originated and where the defendant originally resided, or Tennessee, the place the defendant changed his residency to and failed to register as a sex offender.

Therefore, venue has been properly laid in this district.

## VIII

For the foregoing reasons, it is **ORDERED** that the defendant's Motion to Dismiss is DENIED.

ENTER: May 12, 2007

/s/ JAMES P. JONES

Chief United States District Judge